# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA CANDELARIA SALAS VALENZUELA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.  1:22-cv-01361-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND DIRECTING CLERK OF THE COURT TO ENTER JUDGMENT ON BEHALF OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND CLOSE THIS ACTION<br><br>(ECF Nos. 18, 20, 21) |

## I.

## INTRODUCTION

Maria Candelaria Salas Valenzuela ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing the Administrative Law Judge's opinion is not supported by substantial evidence,

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 13, 14.)

1

and she committed legal error in evaluating the opinion of the agency's consultative psychologist, Jerry Livesay, Ph.D. For the reasons explained herein, Plaintiff's Social Security appeal shall be denied.

## II.

## BACKGROUND

### A. Procedural History

Plaintiff previously filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income that were denied by Administrative Law Judge Sharon Madsen on January 24, 2018. (AR 80-93.)

In the current matter, Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on January 30, 2020. (AR 134, 135.) Plaintiff's applications were initially denied on October 20, 2020, and denied upon reconsideration on January 19, 2021. (AR 180-83, 185-88, 192-96, 198-202.) Plaintiff requested and received a hearing before Administrative Law Judge Yvette N. Diamond ("the ALJ"). Plaintiff appeared with counsel for a telephonic hearing on September 20, 2021. (AR 43-78.) On October 28, 2021, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 19-37.) On September 1, 2022, the Appeals Council denied Plaintiff's request for review. (AR 1-3.)

### B. The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, October 28, 2021:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019.
2. Plaintiff has not engaged in substantial gainful activity since the alleged onset date of April 30, 2014.
3. Plaintiff has the following severe impairments: degenerative disc disease; radiculopathy; right shoulder osteoarthritis; carpal tunnel syndrome; chronic pain syndrome; migraines; s/p brain aneurysm; hypertension; hyperlipidemia; diabetes mellitus; obesity; gastro-esophageal reflux disease; neurocognitive disorder; and major depressive disorder.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

5. Plaintiff is unable to perform any past relevant work.

6. Plaintiff was born on February 2, 1969, and was 45 years old which is defined as an individual approaching advanced age on the alleged disability onset date.

7. Plaintiff has at least a high school education.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not she has transferable job skills.

9. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

10. Plaintiff has not been under a disability, as defined in the Social Security Act, from April 30, 2014, through the date of decision.

(AR 25-36.)

## III.

## LEGAL STANDARD

**A.     The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[3] <u>Batson v. Comm'r of Soc.</u>

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits.

Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4] A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B.    Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse

the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff challenges the ALJ's determination that she has the mental functional capacity to perform simple, routine tasks that are not fast-paced and have no strict production demands, involving only low stress work which is defined as occasional decision making and occasional changes in the work setting. Plaintiff argues that the ALJ erred by failing to properly consider the opinion of Dr. Livesay and that she did not adequately explain her analysis for rejecting Dr. Livesay's restrictions, specifically the marked limitations opined. (Pl.'s Opening Brief ("Mot.") 17, ECF No. 18.) Plaintiff contends that the medical records referenced by the ALJ are limited and the ALJ mischaracterized the evidence while ignoring evidence that was consistent with Dr. Livesay's opinion. (Mot. 18.)

Plaintiff also argues that the mischaracterization of the evidence by inaccurately suggesting normal mental examinations reflects a flawed analysis and improper cherry picking. (Mot. 19.) Plaintiff alleges that the ALJ ignored the documentation of poor concentration and difficulties with activities of daily living. (Mot. 20.) Plaintiff argues that there is sufficient evidence of Plaintiff's

1 mental limitations that were ignored by the ALJ and that is error. (Mot. 21.) Plaintiff contends that
2 the error was harmful and seeks remand for further proceedings. (Mot. 23.)

3      Defendant responds that the ALJ properly evaluated the opinion of Dr. Livesay and properly
4 explained her consideration of the most important factors: consistency and supportability in finding
5 Dr. Livesay's opinion not persuasive. (Def.'s Responsive Brief ("Opp.") 12, ECF No. 20.)
6 Defendant argues that Plaintiff is seeking to have the court reweigh the evidence in her favor. (Opp.
7 13.) Defendant contends that the ALJ does not have an obligation to discuss every piece of evidence
8 and the evidence Plaintiff cites does not show that the ALJ lacked evidentiary support for her
9 findings. (Opp. 13.) Further, Defendant contends that Plaintiff does not explain how the evidence
10 that she cites in her brief undermines the ALJ's analysis. (Opp. 13.) Defendant argues that Plaintiff
11 cites her self-reports to her treating providers, however, the ALJ is not required to credit her
12 subjective complaints merely because they are contained in medical records. (Opp. 13-14.)

13      Finally, Defendant argues that even if the ALJ erred in evaluating the opinion, such error
14 would be harmless. (Opp. 15.) Dr. Livesay opined the Plaintiff had marked limitations in usual
15 stress tolerance, and Defendant contends that the RFC actually accommodates the limitation because
16 the ALJ limited Plaintiff to simple, routine tasks in a low stress environment, which is defined as
17 involving only occasional decision-making and occasional work setting changes. (Opp. 15.)
18 Finally, Defendant asserts that Plaintiff has not shown that, if there was an error in assessing the
19 limitations, there was any prejudice. (Opp. 16.)

20      Plaintiff replies that her challenge to compliance with the regulations is not limited to the
21 substantial evidence test. (Pl.'s Reply Brief ("Reply") 2, ECF No. 21.) Plaintiff asserts that the
22 ALJ's analysis violated the agency's regulations and remand is warranted. (Reply 3.) Plaintiff also
23 replies that the RFC does not accommodate the limitations opined by Dr. Livesay. (Reply 4.)
24 Plaintiff contends that while the RFC may arguably have addressed some of the limitations opined
25 by Dr. Livesay, the restrictions assessed by Dr. Livesay would have precluded the other jobs that
26 were identified by the ALJ and this may have resulted in a finding of disability. (Reply 5.)

27      / / /
28      / / /

**A.     Applicable General Legal Standards**

1. <u>Weighing Medical Opinions and Prior Administrative Medical Findings</u>[5]

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence. See <u>Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions)</u>, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "clear and convincing reasons" to reject the opinion of a treating physician where uncontradicted by other evidence, or otherwise to provide "specific and legitimate reasons supported by substantial evidence in the record," where contradictory evidence is present. <u>Woods v. Kijakazi</u>, 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other

---

[5] Under the applicable regulations for evaluating medical evidence, State agency medical and psychological consultants do not provide "medical opinions." Rather, the new regulations use the term "prior administrative medical finding" to refer to findings "about a medical issue" made by the State agency medical and psychological consultants who review a claimant's medical file at the initial and reconsideration levels of the administrative process. See 20 C.F.R. § 416.913(a)(5).  ALJs, however, must consider this evidence under the same rules that apply to "medical opinions" because these "consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(1); <u>see also</u> 20 C.F.R. § 416.913(a) (identifying "medical opinions" and "prior administrative medical findings" as categories of evidence an ALJ must consider), (a)(2) (defining "medical opinions").

factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. Woods, 32 F.4th at 791 (citing 20 C.F.R. §§ 404.1520c(a), (b)(2)). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be." 20 C.F.R. § 404.1520c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in her decision how persuasive she finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)–(3). Further, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how she considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

**B.     Discussion**

Plaintiff contends that the ALJ erred in evaluating the opinion of Dr. Livesay.

1. ALJ's Opinion
In addressing Plaintiff's mental deficiencies, the ALJ considered Dr. Livesay's opinion.

> Similarly, the claimant alleges some mental deficiencies; however, the claimant lacks the objective medical evidence to substantiate the totality of her allegations [AR 406, 418, 684, 731, 772.] Specifically, the claimant underwent a consultative examination in 2020 with Jerry Livesay, Ph. D. [AR 403-407.] During the examination, the claimant demonstrated slow speech, gait, and mental stream of flow while reporting that she suffered a bad headache earlier that day [AR 405-06].

>Additionally, she was unable to recall any objects after a five-minute delay, and she had a tendency to forget questions (Id).  However, she exhibited high average intelligence and was able to complete simple addition and subtraction problems (Id). Additionally, she had a cooperative attitude and had [no] signs of delusional thinking (Id).
>
>Further, the claimant generally demonstrated unremarkable mental functioning during other examinations [AR 416-480, 676-722, 714-751, 753-780.] Specifically, she generally demonstrated appropriate speech and affect (Id).  Additionally, she demonstrated normal mental status and normal memory during multiple examinations (Id).  Further, the claimant testified that she takes psychiatric medication but does not see a psychiatrist or a counselor.
>
>Considering the objective evidence of the claimant's neurocognitive disorder and major depressive disorder, in light of the objective medical record and the claimant's reports regarding her mental impairments, because the claimant showed slow mental functioning and memory deficits but was able to perform simple mathematics during the consultative examination, the claimant can perform simple, routine tasks that are not fast paced and have no strict production demands.  Additionally, because the claimant reported deficits in handling stress but generally demonstrated unremarkable mental functioning, the claimant can perform low stress work, which is defined as occasional decision-making and occasional changes in the work setting.

(AR 32.)

In evaluating the medical evidence, the ALJ considered the opinion of State examiner James Levasseur, Ph.D. who opined that Plaintiff had no more than mild limitations in mental functioning with non-severe impairment.  (AR 33.)  The ALJ found the opinion to be somewhat persuasive as it was internally supported by the examiner's own review of the record, but not entirely consistent with Plaintiff demonstrating memory deficits during the consultative examination.  (AR 33,127-28, 406.)

The ALJ considered the opinion of Dr. Livesay and found it to be not persuasive.  (AR 34.)  Dr. Livesay opined that Plaintiff was markedly limited in her ability to deal with usual stress encountered in the workplace.  (AR 34.)  While the opinion was somewhat supported, Plaintiff demonstrated slow mental stream and slow rate of speech during the examination, the ALJ found it not supported by Plaintiff showing normal memory during multiple examinations in 2021.  (AR 34, 405, 684, 772.)  Further, Plaintiff was not anxious during multiple examinations.  (AR 34, 405, 684, 772.)

The ALJ also considered that Plaintiff reported deficits with her migraines but was able to perform simple addition and subtraction during the consultative examination despite suffering a bad headache earlier that day.  (AR 34.)  Additionally, the ALJ considered that Plaintiff reported that he

takes her medication as prescribed, and it is helpful. (AR 34.)

### 2. Whether the ALJ erred in considering Dr. Livesay's opinion

#### a. Whether the ALJ misrepresented Dr. Livesay's report

Plaintiff argues that the ALJ mischaracterized the report of Dr. Livesay by referring to a page that only mentions "documentation of Plaintiff's endorsement of "chronic headaches, memory impairment, hypersomnia, confusion, and chronic fatigue since her brain aneurysm in 2014." (Mot. 14.) Plaintiff contends that this mischaracterizes the evidence and therefore remand is appropriate. (Mot. 14.) Defendant replies that the reference to this page was clearly a typographical error and not a misunderstanding of Dr. Livesay's report as the ALJ was aware of Plaintiff's memory problems. (Opp. 12 fn.12.)

In considering Plaintiff's mental impairments, the ALJ noted that during the consultative examination, Plaintiff was unable to recall any of the objects after a five-minute delay, however she demonstrated high average intelligence and was able to perform simple addition and subtraction. (AR 27, 406.) Further, the ALJ considered that she demonstrated slow speech and deficits in concentration because she forgot some of the questions. (AR 28, 405.)

In developing the RFC, the ALJ considered the consultative examination by Dr. Livesay found Plaintiff demonstrated slow speech, gait and mental stream of flow while reporting that she had suffered a bad headache earlier in the day. (AR 32, 405.) The ALJ also considered that she was unable to recall any objects after five minutes and had a tendency to forget questions. (AR 32, 406.) However, Dr. Livesay also found that Plaintiff had high average intelligence, was able to complete simple addition and subtraction problems, and did not show signs of delusional thinking. (AR 32, 406.)

In finding Dr. Livesay's opinion not to be persuasive, the ALJ noted that Dr. Livesay opined that Plaintiff had markedly impaired ability to deal with the usual stress encountered in the workplace. (AR 34, 407.) The ALJ found the opinion to be somewhat supported by Plaintiff demonstrating a slow mental stream and slow rate of speech during the examination, it was not supported by other records in 2021 showing normal memory and no anxiety on examination. (AR 34, 405, 684, 772.)

Plaintiff contends that the ALJ's statement, "While it is somewhat supported by the claimant demonstrating slow mental stream and slow rate of speech during the consultative examination, it is not supported by the claimant showing normal memory during multiple examinations in 2021[,]" (AR 34), misrepresented that Dr. Livesay's report contained normal mental findings, (Mot. 17). Defendant responds that the ALJ made a typographical error.  (Opp. 13, fn.12.)  However, it seems clear from the sentence that the reference to Dr. Livesay's report was for the slow mental stream and slow rate of speech contained therein and was not an indication that the ALJ found Dr. Livesay's report to have normal mental findings.  The ALJ could have been clearer had she made her citations differently ("While it is somewhat supported by the claimant demonstrating slow mental stream and slow rate of speech during the consultative examination [Exhibit B3F/3], it is not supported by the claimant showing normal memory during multiple examinations in 2021[, (Exhibits B10F/10; and B12F/21)].  This does not compel a finding that the ALJ misrepresented the report of Dr. Livesay.

Dr. Livesay's findings during the consultative examination were considered and the findings of Dr. Livesay were correctly set forth in the ALJ's opinion.  The Court finds that the ALJ did not misrepresent Dr. Livesay's opinion by finding that Dr. Livesay's mental findings were normal.

**b.    Whether substantial evidence supports the ALJ's opinion**

Plaintiff argues that the ALJ improperly ignored evidence that supports Dr. Livesay's report, and this is legal error that requires remand.  Specifically, Plaintiff argues that the ALJ did not mention all the findings in Dr. Livesay's report and other evidence in the record that support his opinion.  (Mot. 20.)  Plaintiff contends that the ALJ cherry picked from the record and ignored evidence that would support Dr. Livesay's opinion.   An ALJ would err by ignoring significant objective evidence from other medical and nonmedical sources in the record that are consistent with the medical opinion rejected.  Thompson v. Comm'r of Soc. Sec., No. 2:20-CV-3-KJN, 2021 WL 1907488, at *6 (E.D. Cal. May 12, 2021); see also Ghanim v. Colvin, 763 F.3d 1154, 1161-62 (9th Cir. 2014) (some period of improvement does not mean the impairment no longer serious affects the claimant's ability to work; the medical record must be read in context of the overall diagnostic picture the provider draws); Garrison v. Colvin, 759 F.3d 995, 1018 (9th Cir. 2014) (ALJ erred by singling out a few periods of temporary well-being from a sustained period of impairment).

The ALJ found that Dr. Livesay's opinion that Plaintiff was markedly limited in her ability to deal with the usual stress encountered in the workplace was not persuasive because it was not supported by several other normal mental examinations in 2021 and findings during those examinations that Plaintiff was not anxious. (AR 34.)  Otherwise, the ALJ's findings are consistent with Dr. Livesay's report which opined that Plaintiff was capable of managing her own funds; her ability to perform simple and repetitive tasks was mildly impaired; her ability to perform detailed and complex tasks is moderately impaired; her ability to accept instructions from supervisors was unimpaired; her ability to interact with coworkers and the public was mildly impaired; and her ability to perform work activities on a consistent basis without special or additional instruction was mildly impaired; and her ability to maintain regular attendance and complete a normal work day/work week without interruptions from a psychiatric condition is moderately impaired. (AR 407.)  Accordingly, the Court considers whether the evidence that Plaintiff cites in her motion is consistent with Dr. Livesay's opinion that Plaintiff's ability to deal with the usual stress encountered in the workplace was markedly impaired.[6]  (AR 407.)

The ALJ considered the following medical records that he found to be inconsistent with Dr. Livesay's finding of marked limitations.  Plaintiff was seen on September 29, 2020, by her primary care provider. (AR 417-18.)  Plaintiff reported no anxiety, depression, sleep disturbance, irritability, or mood swings. (AR 417.)  On examination, she was found to be appropriately dressed, did not appear withdrawn, and speech and affect were appropriate. (AR 418.)

Plaintiff was seen on April 13, 2021, by her pain specialist. (AR 683-84.)  She reported headaches, anxiety, and depression. (AR 683.)  She was noted to be well groomed and appeared to be in moderate pain. (AR 683.)  On examination of higher functions, Plaintiff was conscious, and oriented to time, place, and person. (AR 684.)  Her mental status was normal, and she had normal immediate, recent, and remote memory.[7] (AR 684.)  Her speech was normal in rate, flow, rhythm,

---

[6] Although the ALJ states "support" the evidence of other providers refers to consistency. 20 C.F.R. § 404.1520c(c)(2).

[7] While Plaintiff points out that she was on multiple medications and no medical source directly commented on the effects of her prescribed medication, the mental examinations from her pain specialist demonstrate that her mental status appeared unimpaired during examination.

1 productivity and tone. (AR 684.) Plaintiff argues that this record also shows that Plaintiff had
2 abnormal posture, poor concentration and difficulties with activities of daily living. (Mot. 20.) It is
3 unclear how the finding of abnormal posture would support a marked limitation in ability to handle
4 usual stress in the workplace, and the difficulty with concentration and daily activities (AR 684) are
5 Plaintiff's subjective complaints, not medical findings. The ALJ is not required to credit a claimant's
6 subjective complaints simply because they are recorded in her physician's records. Sager v. Colvin,
7 622 F. App'x 629, 629 (9th Cir. 2015) (citing Batson, 359 F.3d at 1195).

8 Plaintiff saw her primary care provider on April 20, 2021, and reported no anxiety, depression,
9 sleep disturbance, irritability or mood swings. (AR 730.) She was noted to be appropriately dressed
10 and did not appear anxious or withdrawn. (AR 731.) Plaintiff was in no acute distress and speech
11 and affect were appropriate. (AR 730-31.) On neurologic examination, Plaintiff was alert and
12 oriented times three with no gross abnormalities noted. (AR 731.)

13 Plaintiff was seen by her pain specialist on July 7, 2021, and reported her pain interfered with
14 her sleep, concentration, mood, and recreation at times. (AR 769.) In her motion, Plaintiff argues
15 that the ALJ ignored Dr. Kay's observation that her condition sometimes affects her mood and
16 interferes with her concentration. (Mot. 20.) However, again the record referred to contains
17 Plaintiff's reports of her symptoms, which are not medical findings. (Mot. 9, AR 684.) Sager, 622
18 F. App'x at 629.

19 At this visit, Plaintiff denied disorientation or dizziness and reported anxiety, but no
20 depression or insomnia. (AR 770.) On examination, Plaintiff was found to be in no acute distress,
21 with a normal demeanor. (AR 771.) She was anxious, and in moderate pain. (AR 771.) Plaintiff
22 was found to have good communication ability. (AR 771.) There were no signs of intoxication or
23 withdrawal. (AR 771.) Plaintiff was conscious, oriented to time, place and person, and her mental
24 status was noted to be normal. (AR 772.) Plaintiff had normal immediate, recent, and remote
25 memory. (AR 772.) Plaintiff's speech was normal in rate, flow, rhythm, productivity, and tone.
26 (AR 772.)

27 Plaintiff argues that the ALJ failed to consider specific findings in Dr. Livesay's examination
28 that supported his opinion. (Mot. 18.) However, an ALJ is not required to discuss every individual

finding in the record.  Here, the ALJ considered that Plaintiff demonstrated slow speech, mental flow, and gait during her examination and that she was unable to recall any objects after a five-minute delay and had a tendency to forget questions.  (AR 32.)  Plaintiff also showed high average intelligence, was able to complete simple addition and subtraction problems, had a cooperative attitude, and no signs of delusional thinking.  (AR 32.)  The ALJ found that because Plaintiff showed slow mental functioning and memory deficits but was able to perform simple mathematics during the consultative examination, she could perform simple, routine tasks that are not fast paced and have no strict production demands.  (AR 32.)  Additionally, the ALJ found that because Plaintiff reported deficits in handling stress but generally demonstrated unremarkable mental functioning she could perform low stress work, defined as occasional decision-making and occasional changes in the work setting. (AR 32.)

In specifically addressing Dr. Livesay's opinion, the ALJ found that it was somewhat supported by Plaintiff demonstrating slow mental stream and slow rate of speech during the exam. (AR 34.)   20 C.F.R. § 404.1520c(c)(1).  While the ALJ stated Dr. Livesay's opinion was not supported by Plaintiff showing normal memory and no anxiety during multiple examinations in 2021, (AR 34), this factor speaks to consistency, not supportability.   20 C.F.R. § 404.1520c(c)(2).

Upon review of the medical evidence in the record cited by Plaintiff to support Dr. Livesay's opinion, the Court finds none that are consistent with the marked limitations opined which would warrant remand.  Accordingly, the ALJ's finding that Dr. Livesay's opinion was not persuasive has substantial support in the record. The ALJ did not commit legal error by ignoring significant evidence in the record that would support Dr. Livesay's opinion.[8]

**V.**

**CONCLUSION AND ORDER**

In conclusion, the Court finds that the ALJ committed no error and Plaintiff's challenges to the ALJ's findings regarding Dr. Livesay's opinion are denied.

---

[8] As the Court finds no error in the ALJ's decision regarding Dr. Livesay's report, Defendant's alternate argument that the residual functional capacity adequately accommodated the marked impairment in ability to deal with the usual stress encountered in the workplace shall not be addressed.

15

1   Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the
2  Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered
3  in favor of Defendant Commissioner of Social Security and against Plaintiff Maria Candelaria Salas
4  Valenzuela.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:    **February 27, 2024**

UNITED STATES MAGISTRATE JUDGE